**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **ACE HARDWARE CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.** |
| **v.** | ) | |
| | ) | |
| **T & M HARDWARE, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff Ace Hardware Corporation ("Ace"), by its attorneys, and for its Complaint against Defendant T & M Hardware, Inc. ("T&M") states as follows:

**INTRODUCTION**

1.     Ace brings this action because T&M, a former Ace Hardware retailer, has refused to remove from its operating location Ace's well-known name and related marks.  Prior to bringing this lawsuit, Ace attempted to get the Defendant to voluntarily de-identify itself as having an affiliation with Ace.  Despite repeated requests, T&M has failed to comply completely with its contractual and legal obligations. The Defendant is not only prohibited from utilizing Ace's federally registered marks under the Lanham Act, but it also signed contracts that prohibit it from using the Ace name upon termination of its Ace affiliation and requires it to remove such marks from its operating location.   As such, Ace requests injunctive relief and monetary damages.

**PARTIES**

2.     Plaintiff Ace is a Delaware corporation, having its principal place of business in Oak Brook, Illinois.  Ace is, therefore, a citizen of the states of Illinois and Delaware.

1

3.      Defendant T&M is a corporation organized under the laws of the state of Arizona with its principal place of business in Glendale, Arizona.  T&M is therefore a citizen of Arizona.

## JURISDICTION and VENUE

4.      This Court has jurisdiction pursuant to Sections 34(a) and 39 of the Lanham Act and also pursuant to 28 USC §§ 1331 and 1338 in that this action involves claims under the laws of the United States, including an act of Congress relating to trademarks.  This Court also has supplemental jurisdiction over the common law claims alleged herein under 28 USC § 1367 (a), as those claims are so closely related to the claims over which this Court has original jurisdiction that they form part of the same case or controversy.  Finally, this Court has jurisdiction pursuant to 28 U.S.C. § 1332 based upon the complete diversity of citizenship of the parties and the amount in controversy exceeding the jurisdictional minimum of $75,000.

5.      Venue is proper in this District, *inter alia*, pursuant to 28 U.S.C. § 1391, because this case arises out of actions that occurred, at least in substantial part, within this Judicial District.  Furthermore, the Ace Hardware Membership Agreement and the Ace Brand Agreement for the Defendant were negotiated in part in Illinois.

## GENERAL ALLEGATIONS OF FACT

### A.      Background

6.      Founded in 1924 by a group of Chicago hardware store owners, Ace operates as a cooperative that purchases merchandise in bulk and allows its individual member-retailers to purchase merchandise in smaller quantities to save money.  This allows its retailers' stores to compete effectively at retail with larger chain stores in their markets.

7.      As a retailer-owned cooperative, Ace is wholly owned by its independently operated retailers.  When retailers affiliate with Ace, they purchase shares of Ace stock which gives them voting rights in the cooperative.

8.      Ace spends millions of dollars each year advertising and promoting the Ace brand on behalf of its cooperative members.  Ace has also registered various Ace marks with the United States Patent and Trademark Office, including as serial numbers 85012032, 1486528, 73323679, and 72228593.

**B.      T&M History With Ace.**

9.      Since the 1970s, and until recently as described below, T&M served as an Ace retailer.  T&M operated a three-store chain in Glendale, Arizona owned by Anthony Mandile.  Upon Anthony Mandile's death in 2012, the affiliation of these three stores with Ace was terminated on June 17, 2014 (the "Termination Date") by the request of the third party fiduciary appointed to handle the estate of Anthony Mandile, which was held in a family trust.   On information and belief, Anthony Mandile's children were the beneficiaries of the trust. One of the three T&M stores, under the ownership of one of Anthony Mandile's children, re-affiliated with Ace.

10.      Ace entered into short term agreements with the other two T&M stores to allow the fiduciary and the other two beneficiaries to work out the disposition of these stores and to allow them additional time to submit requirements for new affiliations.  During this time, and by request of T&M, Ace continued to provide the T&M stores with Ace merchandise and allowed the stores to continue using Ace trademarks.  These short term agreements ended on August 31, 2014.

11.     The agreements included the condition that if the applications for re-affiliation were denied, the T&M store in question would immediately terminate its use of all Ace signs and trademarks.  This condition is part of the Ace Hardware Membership Agreement and Ace Brand Agreement under which Ace originally affiliated with T&M and which would be controlling for any T&M stores that became re-affiliated with Ace.

12.     One of the two stores that had applied for re-affiliation, identified as Ace Store No. 5170 and located at 4498 W. Peoria Avenue, Glendale, Arizona 85302 (hereafter the "Peoria Avenue store"), eventually came under the control of Anthony Mandile's daughter Pamela Mandile-Croteau ("Mandile").

13.     Although the short term agreements ended on August 31, 2014, Mandile had indicated that she wanted to continue to try to become re-affiliated with Ace after that time. Ace, however, formally denied re-affiliation for the Peoria Avenue in April 2015.

14.     Subsequently, T&M continued to display Ace signage and trademarks at its Peoria Avenue store despite repeated efforts by Ace to ensure compliance with the agreements between Ace and T&M.

15.     Before filing this Complaint, Ace made numerous efforts to have T&M remove the Ace signage, which is on three sides of the Peoria Avenue store building, as per the contractual requirements of the agreements between Ace and T&M.

16.     On April 16, 2015, Ace instructed Mandile to remove Ace signage and other "materials at the store bearing Ace trademarks".

17.     Ace representatives have made multiple visits to the Peoria Avenue store after the delivery of the April 16, 2015, letter to request and assure compliance.  To date, T&M has not

removed all of its Ace signage and continues to include material at the store that suggests there is an ongoing relationship with Ace.

18.     On July 21, 2015, Ace's corporate counsel sent a letter regarding the unauthorized use and infringement of Ace signage and trademarks by T&M.  The letter asked T&M remove all Ace signage and trademarks from the Peoria Avenue store by no later than July 31, 2015 and to provide written certification of compliance to Ace.  The letter reminded Mandile that T&M's agreements with Ace had terminated over a year ago, on June 17, 2014, and that T&M had been asked to remove all exterior and interior signs by letter over three months ago, on April 16, 2015, as well as in face-to-face meetings in June 2015.  The letter clearly stated: **"Your unauthorized use of the Ace trademarks in connection with your hardware business constitutes a breach of the Ace Brand Agreement . . ."**  (emphasis added)  In addition, the letter stated that the continued unauthorized use of the Ace trademarks by T&M "**is likely to create confusion in the trade and among the purchasing public and, therefore, constitutes unfair competition and trademark infringement under state and federal law.**" (emphasis added)

19.     The letter further reminded Mandile that as she had been advised, under the Ace Brand Agreement, she was required to pay a monthly fee of $10,000 for each and every month following termination of the Agreement during which she displayed any materials bearing any Ace trademark or other intellectual property.

**C.     Defendant T&M Contractually Agreed To Stop Using The Ace Name When Its Affiliation Ended.**

20.     The relationship between Defendant T&M and Ace was governed, in part, by Ace's standard Ace Hardware Membership Agreement.  Pursuant to the Ace Hardware Membership Agreement, the Defendant agreed that:

> **"Upon the termination of this Agreement, the Member agrees to make no reference to the Member's former relationship with [Ace] in the advertising and promotion of the Member's business at the member location or in the advertising or promotion of any other business…"**

(Article III, par. 7)(emphasis added).

22.     The relationship between Defendant T&M and Ace was also governed, in part, by Ace's standard Ace Brand Agreement.  Pursuant to the Ace Brand Agreement, the Defendant agreed that it would cease using the Ace name and related marks upon termination of the Ace Brand Agreement:

> **<u>Use of "Ace" Identification to Cease upon Termination of Agreement</u>**
>
> **Upon termination of this Agreement for any reason, [Defendant agrees] to discontinue the use of any and all Marks, included but not limited to, the word "ACE" and the use of all trade names, trademarks, service marks, or logos belonging to or registered by the Company (including, but not limited to, to those bearing or suggesting any reference, directly or indirectly, to the Member's former affiliation with the Company) <u>and to remove</u>, at the Member's sole expense, all identification, signs, decals, displays, or other materials used by the Member at the member location which contain any of the foregoing . . .**

(Article III, Paragraph 3) (emphasis added).

23.     Article III, Paragraph 3, of the Ace Brand Agreement further states:

> **Further, if the Member continues, following such termination, to display at <u>or have affixed</u> to the member location any identification, signs, decals, displays or other materials bearing any Marks or other intellectual property of the Company, then the Member agrees to pay to the Company a fee in the amount of Ten Thousand Dollars ($10,000) per month, payable on the first day of each and every month during which any such identification sign continues to be affixed or displayed at the member location for one or more days.  Such payments shall continue to accrue and be due and payable until the first day of the month following the month in which all such identification, signs have been permanently removed from the member location.**

(*Id.*, emphasis added)

6

**D.**   **Defendant's Refusal To Remove Ace's Marks.**

24.     It was only after Ace's final demands for removal of the signage that Defendant made some effort to cover up only the "Ace" portion of the exterior signage, but through the date of the filing of this Complaint even all exterior signage has yet to be removed.  The following photographs of the Peoria Avenue storefront were taken by Ace representatives on July 23, 2015 almost a year after the short term agreement between the parties ended on August 31, 2014. Although Defendant has now put up larger banners in an effort to cover the "Ace" portion of the signage, the distinctive "Hardware" part of Ace's registered trademark is not covered, and Defendant has failed to remove the "Ace Hardware" signs that are affixed to the building despite contractually agreeing both to discontinue their use "and to remove" them.





25.     Defendant also continues to also identify itself as having an ongoing relationship with Ace.  For example, Defendant continues to utilize pricing labels that say "ACE PRICE" that use Ace's well-known logo as evidenced by these examples from photographs that were taken on September 21, 2015:



26.    Likewise, the Defendant continues to utilize Ace-branded bags for customers as indicated by these photographs at the checkout aisle that were being used on September 21, 2015:



<u>COUNT I</u>

**Breach of Contract**
**Ace Hardware Membership Agreement**

26.     Ace repeats, re-alleges and incorporates by reference Paragraphs 1-25, as if fully set forth herein.

27.     Ace entered into an Ace Hardware Membership Agreement with Defendant for each of its stores.

28.     The Ace Hardware Membership Agreement between Ace and Defendant T&M is a legally binding and enforceable contract.

29.     Ace has performed all of its obligations under the Ace Hardware Membership Agreements.

30.     The Defendant's short term agreement with the Peoria Avenue store terminated on August 31, 2014 and its re-affiliation was declined on April 16, 2015.  The Defendant, however, has continued to display Ace logs at its store in violation of the Ace Hardware Membership Agreement. On information and belief, Defendant is now, and for a substantial period of time has been purchasing its inventory from a competitor of Ace.

31.     As a result, Ace has been irreparably damaged in that its intellectual property continues to be used to falsely advertise an ongoing relationship between Defendant T&M and Ace.

Wherefore, Ace respectfully requests judgment in its favor and for an award of all relief as to which it is entitled under the law, including a temporary restraining order, preliminary and permanent injunction, an award of monetary damages, and an award of attorneys' fees and costs.

## COUNT II

### Breach of Contract
### Ace Brand Agreement

32.     Ace repeats, re-alleges and incorporates by reference Paragraphs 1-31, as if fully set forth herein.

33.     Ace entered into an Ace Brand Agreement with the Defendant that governed, in part, the use of Ace's trademarks and trade names at each of its stores.

34.     The Ace Brand Agreement is a legally binding and enforceable contract.

35.     Under the Ace Brand Agreement, the Defendant was provided a license to use certain Ace trademarks, but also agreed that it would cease using and would remove all Ace trademarks, service marks, and logos upon termination of the parties' relationship.

36.     Ace has performed all of its obligations under the Ace Brand Agreement.

37.     After the Defendant's Ace membership terminated, it continued to have Ace signage affixed to its property and continues to use Ace trademarks.

38.     Pursuant to Article III, Paragraph 3 of the Ace Brand Agreement, the Defendant is obligated to pay to Ace the sum of $10,000 per month for each month that any Ace signs remain "affixed to or displayed at" the Defendant's location until they are "permanently removed".

Wherefore, Ace respectfully requests judgment in its favor and for an award of all relief as to which it is entitled under the law, including a temporary restraining order, preliminary and permanent injunction, an award of monetary damages, and an award of attorneys' fees and costs.

## COUNT III

### Lanham Act - Trademark Infringement

39.     Ace repeats, re-alleges and incorporates by reference Paragraphs 1-38, as if fully set forth herein.

40.     Ace is the owner of the Ace name and trademarks being used by the Defendant as set forth above, including those registered with the United States Patent and Trademark Office.

41.     At all times since the termination of its relationship with Ace, the Defendant has continued to operate as a hardware store at its Peoria Avenue store while using Ace's name, brand, and its associated trademarks.

42.     The use by the Defendant of the "Ace" trademark and related name, trademarks, and brand with the continuing promotion and offering of hardware merchandise in the same location as a former Ace Hardware retailer creates a likelihood that a false and unfair association will be made between the Defendant's current hardware store and Plaintiff.  The purchasing public is likely to believe that Defendant's services and merchandise are connected with, sponsored, or approved by Ace.

43.     Defendant, by the acts complained of herein, is competing unfairly with Ace, and is otherwise using the reputation and goodwill of Ace to promote, offer, and sell business products and services under Ace's good name and valuable trademarks.

44.     By using Ace's name and trademarks, the Defendant is realizing an unjustified benefit from the general advertising provided by Ace to its truly affiliated member stores.

45.     The Defendant's infringement of Ace's trademarks is being done knowingly, with the intent of causing mistake, or to deceive the public.

12

46.     As a result, Ace has suffered monetary damage and will continue to suffer irreparable injury in an amount that is not yet determined but that will be proved at trial.

Wherefore, Ace respectfully requests all damages available to it under the law including compensatory damages, attorneys' fees, and prejudgment interest, that the Court treble the actual damages that Ace has sustained and the profits the Defendant has derived as a result of its infringement, for injunctive relief mandating that the Defendant be ordered to remove all Ace signage, trademarks, and service marks from its operating locations and the Internet immediately, for an award of reasonable attorneys' fees and costs, and for such other relief as the Court deems appropriate.

## COUNT IV

### Unfair Competition

47.     Ace repeats, re-alleges and incorporates by reference Paragraphs 1-46, as if fully set forth herein.

48.     The use by the Defendant of the "Ace" trademark and related trademarks and brand with the continuing promotion and offering of hardware merchandise in the same location as a former Ace Hardware retailer creates a likelihood that a false and unfair association will be made between the Defendant's Peoria Avenue hardware store and Ace.  The purchasing public is likely to believe that the Defendant's services and merchandise are connected with, sponsored, or approved by Ace.  This conduct constitutes false advertising under common law unfair competition.

49.     The Defendant, by the acts complained of herein, is competing unfairly with Ace, and is otherwise using the reputation and goodwill of Ace to promote, offer, and sell business products and services under Ace's good name and valuable trademarks.

50.     By using Ace's name and trademarks, the Defendant is realizing an unjustified benefit from the general advertising provided by Ace to its truly affiliated stores.

51.     The Defendant's infringement of Ace's trademarks is being done knowingly, with the intent of causing mistake, or to deceive the public.

52.     As a result, Ace has suffered monetary damage and will continue to suffer irreparable injury in an amount that is not yet determined but that will be proved at trial.

Wherefore, Ace prays that this Court enter judgment in its favor and against Defendant T&M for an award of all relief as to which it is entitled under the law, including a temporary restraining order, preliminary and permanent injunction, an award of monetary damages, and an award of attorneys' fees, costs and interest, together with such other relief as this Court deems just and equitable.


Dated: September 30, 2015                              Respectfully submitted,

                                                       **ACE HARDWARE CORPORATION**

                                             By:     /s/ David J. Fish_____
                                                     One of its Attorneys


**DEMAND FOR JURY TRIAL**

David J. Fish
Kimberly Hilton
Sarmistha (Buri) Banerjee
The Fish Law Firm, P.C.
200 E 5th Ave., Suite 123
Naperville, IL 60563
Tel: (630) 355-7590
Fax: (630) 778-0400